1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 WILLIAM JOHNSON,                        No. 2: 16-cv-1536 JAM KJN P

12          Plaintiff,

13      v.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14 J. CHAU, et al.,

15          Defendants.

16

17     I.    <u>Introduction</u>

18         Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19 to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion. (ECF

20 No. 58.) Plaintiff alleges that defendants violated his Eighth Amendment right to adequate

21 medical care and state law. For the reasons stated herein, the undersigned recommends that

22 defendants' summary judgment motion be granted as to plaintiff's Eighth Amendment claims.

23 The undersigned also recommends that plaintiff's state law claims be dismissed.

24     II.   <u>Legal Standard for Summary Judgment</u>

25         Summary judgment is appropriate when it is demonstrated that the standard set forth in

26 Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the

27 movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

28 judgment as a matter of law." Fed. R. Civ. P. 56(a).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on April 12, 2017 (ECF No. 15), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

3

III.    Legal Standard for Eighth Amendment Claim

The Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted).

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Further, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

IV.    Plaintiff's Claims

This action proceeds on the first amended complaint as to defendants Dr. Chau, Dr. Pettersen, Dr. Rudas and Dr. Smith. (ECF No. 12.) Plaintiff alleges that defendants denied his requests for morphine and tramadol in violation of the Eighth Amendment and state law.

Plaintiff alleges that on June 1, 2015, defendant Chau examined plaintiff for his multilevel cervical spondylitis. (Id. at 9.) Plaintiff alleges that he asked defendant Chau to prescribe tramadol and morphine for pain, which had previously been prescribed for him at Salinas Valley State Prison ("SVSP") and the Correctional Training Facility ("CTF"). (Id. at 9-10.)

On June 4, 2015, plaintiff received notification that the Pain Management Committee had denied his request for reinstatement of tramadol and morphine. (Id. at 10.)

On June 24, 2015, defendant Pettersen reviewed plaintiff's medical records, reflecting plaintiff's multilevel cervical spondylitis and previous prescriptions for tramadol and morphine. (Id.) Defendant Pettersen took no action to "correct the apparent deliberate indifference to plaintiff's serious medical condition requiring pain medication sufficient to decrease his ongoing severe pain…" (Id.)

On July 16, 2015, defendant Rudas reviewed plaintiff's medical records, reflecting plaintiff's multilevel cervical spondylitis and previous prescriptions for tramadol and morphine. (Id. at 11.) Defendant Rudas took no action to "correct the apparent deliberate indifference to plaintiff's serious medical condition requiring pain medication sufficient to decrease his ongoing severe pain…" (Id.)

On July 18, 2015 and August 28, 2016, defendant Smith, reviewed plaintiff's medical records reflecting plaintiff's multilevel cervical spondylitis and previous prescriptions for tramadol and morphine. (Id. at 11-12.) Defendant Smith took no action to "correct the apparent deliberate indifference to plaintiff's serious medical condition requiring pain medication sufficient to decrease his ongoing severe pain…" (Id. at 11-12.)

V.    Defendants' Evidence

In their statement of undisputed facts, defendants allege that in October 2012, plaintiff was incarcerated at Ironwood State Prison ("ISP") and had been on morphine for six months for the relief of chronic neck pain. (ECF No. 58-3 at 1.) In support of this claim, defendants cite a medical record for plaintiff dated October 10, 2012 from ISP stating, in relevant part, that plaintiff had been on morphine for more than six months. (ECF No. 58-4 at 4.) The October 10, 2012 medical record also states that the plan was to taper plaintiff off morphine and start

NSAIDS.  (Id.)

Defendants allege that plaintiff's morphine prescription was discontinued in 2012 and he was placed on the muscle-relaxant Robaxin.  (ECF No. 58-3. at 1.)  In support of this claim, plaintiff cites a medical record for plaintiff from ISP dated December 19, 2012.  (ECF No. 58-4 at 6.)  This record states that plaintiff's morphine was stopped because a "hoarding form" was filled out for medication non-compliance.  (Id.)  The December 19, 2012 record states that Robaxin 750 mg was substituted for morphine.  (Id.)

Defendants allege that in March 2013, plaintiff had newly arrived at the California Institution for Men ("CIM") and was prescribed tramadol.  (ECF No. 58-3 at 1.)  In support of this claim, defendants cite plaintiff's medical record from CIM dated March 15, 2013.  (ECF No. 58-4 at 8.)  The record states that plaintiff has a follow-up appointment as a new arrival.  (Id.)  Regarding neck pain, the record states,

> He has tried Tylenol No. 3; he has tried methadone; he has tried oxcarbazepine, some sort of tricyclic antidepressant and NSAIDS. He says that none of these were working for him.  He was recently seen by another doctor, specifically a neurosurgeon who recommended that the patient be given morphine.  He said that he is not exercising now because he is in a lot of pain.  He is rating his pain today as 10 out of 10, 0 as no pain and 10 is crying pain.  He said that he has never tried Ultram before in the past.

(Id.)

On March 15, 2013, the CIM doctor wrote plaintiff's relevant pain assessment plan as follows herein:

> The patient is requesting morphine today for his pain in the neck.  He does have obvious MRI report of spinal stenosis.  He also has had some noncompliance issues with the compliance of morphine itself. At this time I discussed with the patient the realistic expectations of the plan.  I told him that I cannot take his pain away, I can only help him relieve some of his pain, and at this point I explained to him that I would like to try the Ultram a few times a day on an as-needed basis, and that this is a controlled substance.

(Id.)

The undersigned observes that Ultram is also known as tramadol.

////

6

In September 2014, plaintiff transferred to Mule Creek State Prison ("MCSP"). (Plaintiff's deposition at 32.) When plaintiff arrived at MCSP, he was taking tramadol and not morphine. (Id.)

In his declaration, defendant Chau states that he examined plaintiff on June 1, 2015 regarding plaintiff's history of chronic neck pain due to cervical spondylosis/stenosis. (ECF No. 58-5 at 2.) In his declaration, defendant Chau states that during his examination of plaintiff on June 1, 2015, he diagnosed plaintiff with chronic neck pain that was fairly controlled. (Id.) Defendant Chau also states,

> Although Johnson had previously been taking morphine for the relief of his pain, this had been stopped long before my involvement in Johnson's care. There are serious concerns regarding the long-term prescription of morphine, such as addiction, and it was not medically indicated at this time as there were multiple other medications which could provide effective pain relief.
>
> 5. Johnson was taking tramadol for pain relief at the time and this had been effective. Because tramadol was no longer a formulary medication within CDCR, however, I offered Johnson a prescription for Nortriptyline, an antidepressant that is also commonly prescribed for the relief of chronic pain such as what Johnson was experiencing. Johnson refused. I therefore renewed his tramadol for six months and submitted a non-formulary drug request for tramadol.

(Id.)

The undersigned observes that the non-formulary drug request form included a section for listing all previous medication tried, including dose, duration and response. (ECF No. 58-6 at 6.) Defendant Chau wrote, in response to this question, that NSAIDs were not helpful and that Tylenol #3 was not helpful, per patient. (Id.) Defendant Chau did not mention the other drugs plaintiff's CIM records stated that plaintiff had tried that did not effectively treat his pain, i.e., methadone, oxcarbazepine and some sort of tricyclic antidepressant.

Defendant Smith denied defendant Chau's non-formulary drug request. In his declaration, defendant Smith states, in relevant part,

> 3. In many instances, there are multiple medications of a comparable nature to treat the same condition. CDCR does not keep every one of these drugs in its prison pharmacies. The California Correctional Health Care Services Systemwide Pharmacy and Therapeutics Committee maintains a systemwide drug formulary, meaning the

medications that are available for prescription to inmates. What medications are on the formulary list changes over time and is not something I have any control over. The development of the correctional formulary is based upon evaluations of efficacy, safety and cost-effectiveness. Department policy requires the usage of formulary medication. Prison pharmacies are required to dispense the most cost-effective, generic equivalent of medications.

4. Non-formulary drug requests are granted when there has been a documented failure with the medications listed in the formulary. They are also granted when documented allergies, side effects, or adverse reactions prevent the use of a formulary medication.

5. On June 2, 2015, I received a non-formulary drug request from Dr. Chau regarding inmate William Johnson. Johnson had been taking tramadol for chronic neck pain. Tramadol was no longer a formulary medication within CDCR. While Johnson reported taking nonsteroidal anti-inflammatory drugs and Tylenol #3 in the past without relief, there were still other medications on the formulary list comparable to tramadol. This included methadone, which is often prescribed for the relief of the type of pain which Johnson suffered from. I therefore denied the non-formulary drug request and directed Dr. Chau to choose a comparable formulary option to tramadol.

(ECF No. 58-6 at 2.)

Defendant Smith did not examine plaintiff. (Plaintiff's deposition at 43.)

In his declaration, defendant Chau states that on June 3, 2015, because defendant Smith had denied the non-formulary request for tramadol, and because plaintiff had been on the drug for a lengthy period of time, defendant Chau ordered that plaintiff remain on tramadol until another examination could take place to discuss alternative pain medications. (ECF No. 58-5 at 3.)

On June 4, 2015, plaintiff submitted a grievance requesting that he be allowed to stay on tramadol and also requesting that he receive morphine. (ECF No. 58-7 at 3.) On June 24, 2015, defendant Pettersen interviewed plaintiff regarding this grievance. (ECF No. 58-4 at 11-12.) Defendant Pettersen ordered that plaintiff would remain on tramadol until it expired on July 3, 2015, and then plaintiff would start methadone on July 4, 2015. (Id. at 11.) Defendant Pettersen also requested an MRI for plaintiff and referred him to a neurosurgeon because plaintiff agreed to reconsider surgery. (Id.)

Defendant Pettersen's notes from the June 24, 2015 interview are difficult to read. (Id.) In his declaration. Defendant Chau states that because plaintiff complained that the pain had been increasing while he was on tramadol, defendant Pettersen ordered a methadone dosage stronger

8

than the tramadol dosage plaintiff had been taking.  (ECF No. 58-5 at 3.)  Defendant Chau states that methadone is an opioid commonly used to treat chronic pain, such as what plaintiff experienced.  (Id.)  Defendant Chau states that methadone is actually preferable to tramadol in that it is less addictive.  (Id.)  Defendant Rudas reviewed and approved defendant Pettersen's response to plaintiff's grievance.  (Id.)  An MRI took place on July 10, 2015.  (Id.)  It found multiple level degeneration of the spine.  (Id.)

Defendant Chau examined plaintiff on August 13, 2015.  (Id.)  During this examination, defendant Chau found that the methadone was proving effective in relieving and controlling plaintiff's pain.  (Id. at 5.)  In addition to methadone, defendant Chau added a prescription for Naproxen, a nonsteroidal anti-inflammatory drug commonly used to relieve pain, swelling and stiffness.  (Id.)

Defendant Chau examined plaintiff on October 9, 2015.  (Id.)  Defendant Chau noted that plaintiff had been seen by the neurosurgeon on September 18, 2015, and that plaintiff was leaning toward surgery.  (Id.)  In his declaration, defendant Chau states that after a discussion of overall pain management options, plaintiff declined any increased dosage of methadone or Naproxen, and did not want any additional medications added.  (Id.)  Defendant Chau states that plaintiff preferred to have his pain medications unchanged.  (Id.)  Defendant Chau then renewed plaintiff's methadone and Naproxen.  (Id.)

The undersigned observes that defendant Chau's report from the October 9, 2015 examination states that plaintiff had a history of chronic neck pain which is getting progressively worse.  (Id. at 25.)

Defendant Chau examined plaintiff on November 23, 2015.  (Id. at 6.)  In his declaration defendant Chau states that he noted that plaintiff had been seen by the neurosurgeon again on November 6, 2015, but now wished to defer surgery and preferred pain management.  (Id.)  Defendant Chau found some mild tenderness in plaintiff's cervical spine.  (Id.)  For this reason, defendant Chau continued plaintiff's Naproxen prescription and increased plaintiff's methadone prescription.  (Id.)  Dr. Chau's report from November 23, 2015 states that plaintiff reported that the pain control was "partially helpful."  (Id. at 31.)  Plaintiff requested morphine during this

examination.  (<u>Id.</u>)

Defendant Chau examined plaintiff on January 25, 2016.  (<u>Id.</u>)  Plaintiff chose pain management rather than surgery.  (<u>Id.</u>)  Defendant Chau found mild tenderness in the cervical spine.  (<u>Id.</u>)  Defendant Chau continued plaintiff's prescriptions for methadone and Naproxen.  (<u>Id.</u>)  The notes from this examination state that plaintiff complained of chronic neck pain.  (<u>Id.</u>)

In his declaration, defendant Chau states that in order to obtain a second opinion regarding plaintiff's medical care, he presented plaintiff's case to the Pain Management Committee at MCSP on February 19, 2016.  (<u>Id</u>)

> That multi-disciplinary committee includes physicians, mental health providers, and physical therapists.  Cases that are particularly complicated, or in which a patient has disagreed with the course of treatment, will commonly be referred to the committee to obtain a second opinion.  Discussing the case with the committee helps establish a consistent approach to the patient's care regardless of which medical staff a patient might see.  With respect to Johnson, the consensus of the committee was to continue Johnson on Naproxen, increase his methadone dosage, and encourage him to follow up with neurosurgery.

(<u>Id.</u> at 6-7.)

Defendant Chau's report from his March 18, 2016 examination of plaintiff states that plaintiff requested pain management and his case was presented to the Pain Management Committee.  (<u>Id.</u> at 43.)  In other words, defendant Chau's report suggests that he referred plaintiff to the pain management committee at plaintiff's request.

In his declaration, defendant Chau states that he followed up with plaintiff on a regular basis over the following months, i.e., March 18, 2016, May 9, 2016, and July 6, 2016.  (<u>Id.</u> at 7.)  Defendant Chau states that his examinations found that plaintiff appeared to be functioning adequately and he reported adequate pain control.  (<u>Id.</u>)  Plaintiff remained on methadone and Naproxen.  (<u>Id.</u>)

The undersigned observes that defendant Chau's report from the March 18, 2016 examination states that plaintiff was still complaining of "some neck pain..."  (<u>Id.</u> at 43.)  Defendant Chau's report from May 9, 2016, states that plaintiff reported that his pain level was adequate at this point.  (<u>Id.</u> at 46.)

Defendant Chau's notes from the July 6, 2016 examination states that plaintiff has refused and still refuses additional adjunctive pain medication to better control his pain such as Pamelor, Elavil and Neurontin. (Id. at 52.) Defendant Chau's notes states that plaintiff stated, "I'm okay with my pain medication and will let the PCP know if he changes his mind about pain management or about cervical spine surgery." (Id.)

Defendant Chau examined plaintiff on July 27, 2016. (Id.) Defendant Chau found that plaintiff had mild to moderate tenderness in the cervical spine. (Id.) However, plaintiff stated that he now agreed to have a prescription of Neurontin added. (Id.) Neurontin, which is also known as gabapentin, is a medication commonly prescribed for the relief of pain of the kind plaintiff was suffering from. (Id.) Plaintiff also agreed to another referral to a neurosurgeon to discuss surgical options. (Id.) Defendant Chau prescribed Neurontin and referred plaintiff to the neurosurgeon. (Id.)

The undersigned observes that defendant Chau's notes from the July 27, 2016 examination state, in relevant part, that, "The patient in the past had a trial of Pamelor which he did not tolerate. Neurontin medication was recommended in the past which he refused. He now is agreeable to Neurontin." (Id. at 55.)

Plaintiff had a neurosurgery consultation on September 22, 2016. (ECF No. 58-4 at 19-20.) The neurosurgeon's report states that plaintiff described his pain that day as 7/10. (Id.) Plaintiff told the neurosurgeon that tramadol and morphine help him best. (Id.) The neurosurgeon did not believe that spinal surgery would make plaintiff better. (Id.)

VI.    Discussion—Eighth Amendment Claim

At the outset, the undersigned observes that much of plaintiff's opposition is devoted to arguing that he had a serious medical need that required pain medication. Defendants do not dispute that plaintiff had a serious medical need. Defendants argue that they did not act with deliberate indifference to plaintiff's serious medical need by failing to prescribe tramadol and morphine, i.e., the subjective element of an Eighth Amendment claim. Because plaintiff's serious medical need is undisputed, the undersigned herein addresses whether defendants acted with deliberate indifference.

A.  Defendant Chau

Defendants argue that defendant Chau did not act with deliberate indifference to plaintiff's serious medical needs because he prescribed medication for plaintiff's pain, including methadone.  Defendants argue that the pain medications prescribed by defendant Chau were effective in providing plaintiff with relief.  Defendants argue that defendant Chau's decision to treat plaintiff with methadone and Naproxen was endorsed by the Pain Management Committee. Defendants argue that on the occasions when plaintiff expressed complaints that the medications were not adequately relieving his pain, defendant Chau adjusted the dosages.  Defendants also argue that when plaintiff arrived at MCSP, the decision to take plaintiff off morphine had long been made.  Additionally, defendants assert that morphine was not medically indicated for plaintiff when he arrived at MCSP and that tramadol was not a formulary medication. Defendants argue that plaintiff's claim against defendant Chau is based on a difference of opinion regarding the course of treatment, which does not rise to an Eighth Amendment claim.

*Did Defendant Chau Act with Deliberate Indifference on June 1, 2015?*

It is undisputed that on June 1, 2015, defendant Chau did not prescribe morphine, renewed tramadol for six months and submitted a non-formulary request for tramadol.[1]

The undersigned first considers whether defendant Chau acted with deliberate indifference by failing to prescribe morphine on June 1, 2015.  Defendant Chau's declaration does not mention that plaintiff had previously had noncompliance issues with morphine prescriptions. Nevertheless, the undersigned finds that defendant Chau's decision that morphine was not medically indicated did not amount to deliberate indifference to plaintiff's serious medical needs. Defendant Chau did not fail to treat plaintiff's pain on that date.  He renewed plaintiff's tramadol prescription for six months and submitted a non-formulary request for tramadol.  Based on these circumstances, the undersigned finds that defendant Chau did not act with deliberate indifference when he failed to prescribe morphine on June 1, 2015.  See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d

---

[1]  Neither party addresses when tramadol became non-formulary, but it is reasonable to infer that this occurred sometime after plaintiff's transfer to MCSP in September 2014.

1133 (9th Cir. 1997) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."); see also Parlin v. Sodhi, 2012 WL 5411710 at *5 (C.D. Cal. Aug.8, 2012) ("At its core, Plaintiff's claim is that he did not receive the type of treatment and pain medication that he wanted when he wanted it. His preference for stronger medication-Vicodin, Tramadol, etc.,-represents precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation."); Tran v. Haar, 2012 WL 37506 at *3–4 (C.D. Cal. Jan. 9, 2012) (plaintiff's allegations that defendants refused to prescribe "effective medicine" such as Vicodin and instead prescribed Ibuprofen and Naproxen reflected a difference of opinion between plaintiff and defendants as to the proper medication necessary to relieve plaintiff's pain and failed to state an Eighth Amendment claim); Ruiz v. Akintola, 2010 WL 1006435 at *7 (E.D. Cal. Mar. 17, 2010) (granting summary judgment in favor of defendants on plaintiff's inadequate medical care claim where he presented no expert evidence that the Ultram which defendants prescribed, instead of the Norco that U.C. Davis physicians had recommended, was not medically warranted or reasonable), aff'd No. 10–16516 (9th Cir. Nov. 2, 2011).

Because tramadol had become non-formulary by June 1, 2015, defendant Chau was required to submit a non-formulary request for plaintiff to continue receiving tramadol. Therefore, defendant Chau's renewal of plaintiff's tramadol prescription for six months and submission of the non-formulary request for tramadol on June 1, 2015, did not constitute deliberate indifference.

The undersigned observes that in the non-formulary request, defendant Chau did not list methadone as one of the drugs plaintiff tried in the past that did not effectively treat his pain. Neither party addresses this issue in their pleadings. As discussed above, plaintiff's CIM records state that tramadol was prescribed because other medications, including methadone, were not effective. Defendant Smith denied the non-formulary request because other formulary medications were available to treat plaintiff's pain, including methadone. Defendant Pettersen went on to prescribe methadone for plaintiff.

////

13

It is not clear why defendant Chau failed to inform defendant Smith in the non-formulary request that methadone, and other medications, had not adequately treated plaintiff's pain in the past. Plaintiff does not claim that he ever told defendant Chau that methadone did not effectively treat his pain. Thus, the reasonable inference from the record is that defendant Chau failed to review plaintiff's medical records when he prepared the non-formulary request. Based on this circumstance, defendant Chau's failure to include methadone in the list of previously tried medications in the non-formulary request may have been negligent, but did not amount to deliberate indifference. See Renfro v. Clark-Barlow, 2019 WL 4670250, at *7 (E.D. Cal. 2019) (defendant's failure to review plaintiff's medical does not rise to Eighth Amendment claim); Cottingham v. Nangalama, 2012 WL 1981452 at *3 (E.D. Cal. June 1, 2012) (a prisoner's allegation that a defendant doctor was deliberately indifferent for failing to review plaintiff's medical records dismissed because it stated nothing more than a negligence claim)

For the reasons discussed above, defendant Chau should be granted summary judgment with respect to plaintiff's claims that he acted with deliberate indifference on June 1, 2015 with respect to his request for morphine and tramadol.

*Did Defendant Chau Act with Deliberate Indifference After June 1, 2015?*

Defendants argue that defendant Chau did not act with deliberate indifference after June 1, 2015 because the record demonstrates that the Pain Management Committee endorsed his decision to treat plaintiff with methadone and Naproxen. Defendants argue that defendant Chau adjusted plaintiff's dosages when he expressed complaints.

It is undisputed that defendant Chau could not prescribe tramadol, because defendant Smith denied defendant Chau's non-formulary request for tramadol. It is undisputed that after defendant Pettersen prescribed methadone for plaintiff in June 2015, defendant Chau examined plaintiff on August 13, 2015, October 9, 2015, November 23, 2105, January 25, 2016, March 18, 2106, May 9, 2016, July 6, 2016 and July 27, 2016. It is undisputed that defendant Chau continued to prescribe methadone, and later Naproxen, for plaintiff. It is also undisputed that in February 19, 2016, the Pain Management Committee agreed that plaintiff should continue on Naproxen and increase his dosage of methadone.

14

In his verified opposition, plaintiff provides no evidence demonstrating that following June 1, 2015, defendant Chau knew that plaintiff had previously tried methadone and that it did not effectively treat his pain. Plaintiff does not claim, for example, that after June 1, 2015, he told defendant Chau that he had previously tried methadone and that it did not adequately treat his pain. However, in his verified opposition, plaintiff disputes defendant Chau's claims that methadone and Naproxen effectively treated his pain. Plaintiff disputes defendant Chau's claim that on October 9, 2015, he declined any increase in his dosages of methadone and Naproxen. (ECF 64-1 at 6.) Plaintiff disputes defendant Chau's claim that on October 9, 2015, he preferred to have his pain medication unchanged. (Id.)

In his verified opposition, plaintiff alleges that on November 23, 2015, he told defendant Chau that his pain medication did not adequately address his pain, which had begun to increase causing stiffness in his neck. (Id.) Dr. Chau's report from November 23, 2015, states that plaintiff reported that the pain control was "partially helpful." (ECF No. 58-4 at 31.) Plaintiff alleges that on January 25, 2016, he told defendant Chau that his pain medication did not adequately address his pain. (ECF No. 64-1 at 6.) Plaintiff alleges that on July 27, 2016, he told defendant Chau that his pain medication was not adequately addressing his pain. (Id.)

The record demonstrates that following June 1, 2015, defendant Chau routinely prescribed methadone and Naproxen to treat plaintiff's pain. The record also demonstrates that after June 1, 2015, defendant Chau continued to be unaware that plaintiff had previously tried methadone. Because defendant Chau did not fail to treat plaintiff's pain, the undersigned finds that defendant Chau did not act with deliberate indifference after June 1, 2015, by prescribing methadone and Naproxen instead of morphine and tramadol. See McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1992) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.").

Accordingly, for the reasons discussed above, defendant Chau should be granted summary judgment as to plaintiff's claim that he acted with deliberate indifference to plaintiff's serious

////

////

medical needs following June 1, 2015.[2]

A.  <u>Defendant Smith</u>

Defendant Smith denied defendant Chau's non-formulary request for tramadol.  For the following reasons, the undersigned finds that defendant Smith did not act with deliberate indifference in denying this request.

It is undisputed that defendant Smith had no control over whether drugs were classified as formulary or non-formulary.  It is also undisputed that in the non-formulary request, defendant Chau described plaintiff's serious medical need (chronic neck pain) and reported that plaintiff had tried NSAIDS and Tylenol # 3 in the past, with no relief.  Defendant Chau did not inform defendant Smith that plaintiff had previously tried other pain medications, including methadone, without success.  Based on his review of defendant Chau's request, defendant Smith denied the non-formulary request for tramadol because other medications, including methadone were available.  It is undisputed that methadone is often prescribed to treat the type of pain plaintiff from.

Based on the undisputed evidence described above, the undersigned finds that defendant Smith did not act with deliberate indifference when he denied the non-formulary request for tramadol submitted by defendant Chau.  Defendant Smith apparently denied the request based on defendant Chau's application, i.e., defendant Smith did not independently review plaintiff's medical records.  Defendant Smith denied the non-formulary request because other medications, comparable to tramadol, were available to treat plaintiff's pain, including methadone.  Defendant Smith was apparently unaware of the CIM record stating that plaintiff had previously tried

---

[2]  After reviewing the record, it appears that defendant Chau did not consistently review plaintiff's medical records, while treating plaintiff and in preparation for the declaration submitted in support of the pending motion.  As discussed above, defendant Chau's declaration filed in support of the pending motion does not reflect that plaintiff's previous morphine prescription was discontinued due to compliance issues.  Defendant Chau was, and is, apparently unaware of plaintiff's past methadone prescription, as reflected in plaintiff's CIM records.  In addition, defendant Chau's notes from July 6, 2016, state that plaintiff refused Pamelor.  Defendant Chau's notes from July 27, 2016, state that plaintiff in the past tried Pamelor, which he did not tolerate.  As discussed above, the failure to review medical records may constitute negligence, but does not rise to deliberate indifference.

1  methadone and that it did not effectively treat his pain.  Based on these circumstances, defendant

2  Smith did not act with deliberate indifference.  See McGuckin v. Smith, 974 F.2d 1050 (9th

3  Cir.1992) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or

4  possible medical need in order for deliberate indifference to be established."); Renfro v. Clark-

5  Barlow, 2019 WL 4670250 at *7 (failure to review plaintiff's medical records did not rise to

6  Eighth Amendment claim).  Accordingly, defendant Smith should be granted summary judgment

7  as to plaintiff's Eighth Amendment claim.

8          B.  Defendant Pettersen

9          Defendants argue that defendant Pettersen is entitled to summary judgment because,

10  during his deposition, plaintiff testified that defendant Pettersen did nothing to him and that he is

11  only a defendant because he works at MCSP.  At his deposition, plaintiff testified that defendant

12  Pettersen did nothing to him.  (Plaintiff's deposition at 52.)  Plaintiff testified that he named

13  defendant Pettersen as a defendant because he "just had to put [him] in there because I seen him

14  here at the institution."  (Id. at 53.)

15          In his opposition, plaintiff argues that defendants took his deposition testimony regarding

16  defendant Pettersen out of context.  (ECF No. 64-1 at 7.)  Plaintiff argues that defendant Pettersen

17  treated him on June 24, 2015.  (Id. at 8.)

18          The undersigned finds that plaintiff has not abandoned his Eighth Amendment claim

19  against defendant Pettersen.  For the reasons stated herein, the undersigned recommends that

20  defendant Pettersen be granted summary judgment as to this claim.

21          It is undisputed that defendant Pettersen interviewed plaintiff on June 24, 2015, regarding

22  his grievance requesting that he be allowed to stay on tramadol and requesting morphine.  It is

23  undisputed that defendant Pettersen ordered that plaintiff would stay on tramadol until July 3,

24  2014 and start methadone on July 4, 2015.  It is undisputed that defendant Pettersen also ordered

25  a methadone dosage stronger than the tramadol dosage plaintiff had been taking, because plaintiff

26  complained that his pain had been increasing while on tramadol.

27          The undersigned has reviewed the records relevant to defendant Pettersen's June 24, 2015

28  interview with plaintiff.  These records contain no evidence that defendant Pettersen knew that

plaintiff had previously taken methadone. The memorandum addressing plaintiff's Institutional

Level grievance, summarizing defendant Pettersen's interview with plaintiff, does not mention

plaintiff's previous methadone prescription. (ECF No. 58-7 at 5-6.) Defendant Pettersen's notes

from the June 24, 2015 interview do not mention the previous methadone prescription. (ECF No.

58-4 at 11-12.) Plaintiff does not claim that he told defendant Pettersen that he previously took

methadone and that it did not effectively treat his pain. Therefore, it appears that defendant

Pettersen was unaware of plaintiff's alleged past methadone prescription.

The reasonable inference from the records discussed above is that defendant Pettersen was

unaware that plaintiff had previously taken methadone when he prescribed methadone for

plaintiff in June 2105. Based on these circumstances, defendant Pettersen's prescription of

methadone, which had allegedly not effectively treated plaintiff's pain in the past, may have been

negligent but did not constitute deliberate indifference. See McGuckin v. Smith, 974 F.2d 1050

(9th Cir.1992) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or

possible medical need in order for deliberate indifference to be established."); Renfro v. Clark-

Barlow, 2019 WL 4670250, at *7 (E.D. Cal. 2019) (defendant's failure to review plaintiff's

medical does not rise to Eighth Amendment claim).

Accordingly, for the reasons discussed above, defendant Pettersen should be granted

summary judgment as to plaintiff's Eighth Amendment claim.

C. Defendant Rudas

Defendants move for summary judgment as to defendant Rudas on the grounds that his

involvement in plaintiff's care was extremely limited. Defendants also argue that at his

deposition, plaintiff acknowledged that he has no complaints about this defendant. At his

deposition, plaintiff testified that he had no complaints against defendant Rudas and that he did

not think defendant Rudas did anything to him. (Plaintiff's deposition at 54.) Defendants argue

that the only apparent involvement by defendant Rudas was in reviewing and approving

defendant Pettersen's response to plaintiff's grievance. Defendants argue that because defendant

Pettersen's response was appropriate, defendant Rudas is entitled to summary judgment.

////

In his opposition, plaintiff argues that defendants took his deposition testimony regarding defendant Rudas out of context. (ECF No. 64-1 at 14.) Plaintiff argues that defendant Rudas failed to act to protect plaintiff from harm or future harm. (Id.)

The undersigned finds that plaintiff has not abandoned his Eighth Amendment claim against defendant Rudas. For the reasons stated herein, the undersigned recommends that defendant Rudas be granted summary judgment as to plaintiff's Eighth Amendment claim.

The only evidence of defendant Rudas' involvement in plaintiff's complaints regarding pain medication is his signature of the July 16, 2015 memorandum partially granting plaintiff's institutional grievance. (ECF No. 58-7 at 5-6.) This memorandum addressed plaintiff's request for tramadol and morphine. (Id.) The memorandum states that defendant Pettersen interviewed plaintiff on July 24, 2015, and prescribed methadone. (Id.) The response also states that defendant Pettersen ordered an MRI and referred plaintiff to telemedicine neurosurgeon. (Id.)

In essence, defendant Rudas denied plaintiff's request for morphine and tramadol, and approved defendant Pettersen's methadone prescription for plaintiff. The undersigned reasonably infers that defendant Rudas did not independently review plaintiff's medical records, which would have contained the record from CIM stating that plaintiff had previously tried methadone and it did not effectively treat his pain. The record contains no evidence that plaintiff told defendant Rudas that methadone did not effectively treat his pain. Therefore, defendant Rudas had no knowledge that methadone had not effectively treated plaintiff's pain in the past when he issued the July 16, 2015 memorandum denying plaintiff's request for morphine and tramadol, and upholding defendant Pettersen's decision to prescribe methadone. Based on these circumstances, the undersigned finds that defendant Rudas did not act with deliberate indifference. See McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1992) (a defendant "must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."); Renfro v. Clark-Barlow, 2019 WL 4670250, at *7 (E.D. Cal. 2019) (defendant's failure to review plaintiff's medical does not rise to Eighth Amendment claim).

For the reasons discussed above, defendant Rudas should be granted summary judgment as to plaintiff's Eighth Amendment claim.

D.  Qualified Immunity

Defendants move for summary judgment based on qualified immunity.

"Government officials are entitled to qualified immunity with respect to discretionary functions performed in their official capacities." Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017). The Supreme Court has established a two-step inquiry for resolving a qualified immunity defense: the constitutional inquiry and the qualified immunity inquiry. See Saucier v. Katz, 533 U.S. 194, 200 (2001). The first step asks whether, taken in the light most favorable to the plaintiff, the facts show that the officials' conduct violated a constitutional right. Id. at 201. The second step asks whether the right was clearly established at the time of the violation. Id.

The undersigned above found that, taking the facts in the light most favorable to plaintiff, defendants did not violate plaintiff's Eighth Amendment rights. For that reason, no further discussion of qualified immunity is warranted.

VII.    Discussion—Negligence

Plaintiff alleges a state law claim for negligence/medical malpractice against all defendants. Defendants move for summary judgment as to the merits of plaintiff's state law claims.

With the § 1983 claims being dismissed, the question before the court is whether to continue exercising supplemental jurisdiction over the California state law claims. The Supreme Court has stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Heath v. City of Desert Hot Springs, 618 F. App'x 882, 886 (9th Cir. 2015) (citing Gibbs, 383 U.S. at 726) (ruling that the district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over the plaintiff's state law claims after dismissing the federal claims); cf. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (stating that although Gibbs says that state law claims "should" be dismissed if federal claims are dismissed before trial, Gibbs never meant that the state law claims "must" be dismissed).

////

Title 28 U.S.C. § 1367(c) identifies the following scenarios where district courts may decline to exercise supplemental jurisdiction over a state law claim:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Additionally, when the federal claims have been dismissed before trial, the district court's discretion to discontinue exercising supplemental jurisdiction over the state law claims should be informed by the Gibbs values "of economy, convenience, fairness, and comity." Acri, 114 F.3d at 1001. The Supreme Court has stated, and the Ninth Circuit has often repeated, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of [Gibbs] factors will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

The undersigned finds that the instant action is a "usual case" where the federal claims have been eliminated and the balance of factors points toward declining supplemental jurisdiction over plaintiff's state law claims. This decision is informed by the Gibbs values, particularly the values of economy and comity. Accordingly, the undersigned recommends that the court decline to exercise jurisdiction over plaintiff's state law claims and that these claims be dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' summary judgment motion (ECF No. 58) be granted as to plaintiff's Eighth Amendment claims;

2. Plaintiff's state law claims be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

21

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 19, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

John1536.sj(2)